IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

MARTIN J. WALSH, Secretary of )
Labor, United States Department of Labor, )
)
    Plaintiff, )
)
    v. )   Civil Action No. 2:22CV56 (RCY)
)
LOCAL 1970, INTERNATIONAL )
LONGSHOREMEN'S ASSOCIATION, )
)
    Defendant. )
)

**MEMORANDUM OPINION**

This matter is before the Court on Defendant Local 1970, International Longshoremen's Association's Motion to Dismiss (ECF No. 9). The Motion has been fully briefed, and the Court dispenses with oral argument because the facts and legal contentions are adequately presented in the materials before the Court, and oral argument would not aid in the decisional process. E.D. Va. Loc. Civ. R. 7(J). For the reasons stated below, the Court will deny Defendant's Motion to Dismiss.

**I. BACKGROUND**

Loal 1970, International Longshoremen's Association ("Defendant") is an unincorporated association maintaining its principal office in Norfolk, Virginia. (Compl. ¶ 5, ECF No. 1.) Defendant is a local labor organization, and its membership is comprised of maintenance and repair technicians who primarily work for four employers covered by the Hampton Roads Shipping Association. (*Id.* ¶¶ 6, 8.) Martin J. Walsh, Secretary of Labor of United States Department of Labor ("Plaintiff") filed a Complaint on February 7, 2022, against Defendant, seeking a judgment that (1) declared Defendant's election for the offices of President, Vice President, Recording

1

Secretary, Secretary Treasurer, Delegate to District Council, Chaplain, Inner Guard, and Sergeant-at-Arms, to be void and (2) directed Defendant to conduct a new election, including nominations, for those offices under Plaintiff's supervision. (*Id.* at 10.)[1] Plaintiff also seeks judgment for the costs of this action. (*Id.*)  The Complaint alleges that Defendant conducted its 2020 election in a manner violative of the Labor-Management Reporting and Disclosure Act ("the Act" or "LMRDA"), 29 U.S.C. §§ 401 *et seq*. (*Id.* at 8-9.)

Every three years, Defendant, governed by Local 1970's Bylaws ("the Bylaws"), elects new officers, which includes the positions of President, Vice President, Recording Secretary, Secretary Treasurer, Delegate to District Council, Chaplain, Inner Guard, and Sergeant-at-Arms. (*Id.* ¶ 9.) Article VII, Section 3 of the Bylaws states:

> The Local shall appoint an Election Committee of three (3) members, whose duties shall be to investigate the nominees and report the qualifications of each to the Local. This shall be done at the Nomination Meeting by moving the nomination up to the order of business to provide time for the committee to investigate and report their findings on the eligibility and qualifications of the candidates at the same meeting.

(*Id.* ¶ 10.)  Article VII, Section 3 of the Bylaws also states that the qualifications for being a candidate include being "[a] member in good standing of [the] local union for at least one (1) year proceeding[2] the date of his nomination" ("the one-year rule"). (*Id.* ¶ 11.)  Further, Article IV, Section 5(a) of the Bylaws provides that "[a]ny member who has not worked within a three (3) month period shall pay a fee of $35.00 per quarter not worked." (*Id.* ¶ 12.) Defendant interprets Article IV, Section 5(a) as requiring payment of the $35.00 inactive fee by the last day of each quarter not worked. (*Id.* ¶ 13.)  Article IV, Section 5(b) of the Bylaws states:

---

[1] The Court employs the pagination assigned to all documents referenced herein by the CM/ECF docketing system.

[2] Plaintiff explains that the use of "proceeding" within the Bylaws is scrivener's error, and the drafters intended to use the term 'preceding.' (Compl. at 3 n.1.)

> Any member who is thirty (30) days or more in arrears in the payment of dues or fails to pay the fee shall be automatically, and without notice, suspended from all rights and privileges of membership. Any member who is eighty (80) days or more in arrears in the payment of dues shall be given written notice that failure to pay within ten (10) days shall mean automatic expulsion; and upon his/her failure to pay within such ten (10) days, he/she shall be automatically, and without further notice expelled and dropped from the Local.

(*Id.* ¶ 14.) Defendant interprets Article IV, Section 5(b) as providing a thirty-day grace period for payment of the inactive fee before a member is no longer in good standing. (*Id.* ¶ 15.) Accordingly, Defendant interprets its Bylaws to mean that a member would fall out of good standing—and thereby become delinquent—if they paid the inactive fee more than thirty days after the last day of each quarter not worked. (*Id.* ¶¶ 16-17.)

During the 2011 officer election, four members were nominated to run for office, but each were delinquent at some point during the year prior to the November 22, 2011 election meeting. (*Id.* ¶ 19.) However, three out of the four members paid outstanding amounts to Defendant in order to regain good standing status. (*Id.* ¶ 20.) The Election Committee determined that those three members were eligible to run for office in 2011, despite having been delinquent at some point during the year prior to their nomination. (*Id.* ¶ 21.) In 2014, during the next officer election cycle, Defendant held a meeting for the nomination of candidates on November 18, 2014. (*Id.* ¶ 22.) Two members were nominated to run for office, and both were delinquent in dues payments at some point during the year prior to the November 18, 2014 meeting. (*Id.* ¶ 23.) However, in the year prior to or during the November 18, 2014 nominations meeting, the two members paid outstanding amounts to Defendant in order to regain good standing status. (*Id.* ¶ 24.) Despite their delinquency at some point during the year prior to their nomination, the Election Committee determined that the two candidates were eligible to run for office. (*Id.* ¶ 25.) During the next election cycle in 2017, Defendant held a meeting for the nomination of candidates on November 21, 2017. (*Id.* ¶

26.) Two members who were delinquent at some point during the year prior to the November 21, 2017 meeting were nominated to run for office. (*Id.* ¶ 27.) These two members paid their outstanding amounts to Defendant in order to regain good standing status in the year prior to or during the November 21, 2017 nominations meeting. (*Id.* ¶ 28.) Despite their previous delinquency, the Elections Committee determined that the two candidates were eligible to run for office. (*Id.* ¶ 29.)

During the next officer election cycle in 2020, Defendant mailed a notice to members about a nominations meeting to be held on November 17, 2020 and an election to be held on December 15, 2020. (*Id.* ¶ 31.) The notice included a separate page that listed the qualifications for candidates as explained in the Bylaws, and among these qualifications was the requirement that a candidate be "[a] member in good standing of [the] local union for at least one (1) year proceeding the date of his nomination." (*Id.* ¶ 32.) Ronald Wright Jr. ("Complainant"), a member of Local 1970, was unable to work from mid-November 2019 to mid-October 2020. (*Id.* ¶ 33.) Due to his inability to work, Complainant owed Defendant the $35 inactive fee for the three quarters of the year that he was inactive: January to March 31, April to June 30, and July to September 30, 2020. (*Id.* ¶ 34.) Complainant was aware that during at least the past three elections, Defendant had found members eligible to run for office despite having been delinquent at some point during the year prior to the nominations meeting so long as the members paid their outstanding amounts and regained good standing prior to or during the nominations meeting. (*Id.* ¶ 35.) Accordingly, Complainant believed that he would be allowed to pay his inactive fees when he returned to work without being disqualified as a candidate. (*Id.* ¶ 36.) Complainant returned to work on or about October 19, 2020. (*Id.* ¶ 37.) Complainant attempted to pay the fees for all three inactive quarters in cash on October 20, 2020 but was told that he needed to pay via check. (*Id.* ¶ 38.) By November 3, 2020,

Complainant had paid the fees for all three inactive quarters and was nominated to run for the office of President at the November 17, 2020 nominations meeting. (*Id.* ¶¶ 39-40.)

The Election Committee determined that Complainant was ineligible to run for office because he had been delinquent at some point during the year prior to the November 17, 2020 nominations meeting which meant that the incumbent President ran unopposed.[3] (*Id.* ¶¶ 41-42.) Prior to the December 2020 election, Complainant appealed the Election Committee's decision to the Local 1970 Executive Board. (*Id.* ¶ 44.) The Executive Board heard Complainant's appeal at a special meeting on December 14, 2020, during which the Board was divided equally as to whether Complainant should be allowed to run for President. (*Id.* ¶ 46.) As a result of the deadlock, the Board deemed Complainant ineligible to run for office. (*Id.*) On December 16, 2020, Complainant sent an email to the Executive Board and the Secretary-Treasurer protesting the determination that he was ineligible to run for office. (*Id.* ¶ 47.) On March 1, 2021, the Executive Board informed Complainant that his protest was denied. (*Id.* ¶ 48.) On the same day, Complainant sent a letter to the Atlantic Coast District ("ACD") Executive Board appealing the Executive Board's denial. (*Id.* ¶ 49.) On June 21, 2021, the ACD Executive Board denied Complainant's appeal and adopted the Executive Board's decision. (*Id.* ¶ 50.) On June 29, 2021, Complainant appealed the ACD Executive Board's decision to the International Executive Council ("IEC") through Stephen Knott, ILA National Secretary-Treasurer. (*Id.* ¶ 51.) On October 29, 2021, the IEC denied Complainant's appeal. (*Id.* at 52.) Having exhausted the remedies available to him and upon receipt of a final decision, Complainant submitted a complaint to the U.S. Department of Labor on November 4, 2021. (*Id.* ¶ 53.)

---

[3] There was only one nominee for each of the remaining officer positions with the exception of the Delegate to District Council position. (Compl. ¶ 43.)

## II. PROCEDURAL HISTORY

Plaintiff filed a Complaint against Defendant on February 7, 2022 (ECF No. 1). On February 28, 2022, Defendant filed a Motion to Dismiss for Failure to State a Claim and a Memorandum in Support (ECF Nos. 9, 10). On March 14, 2022, Plaintiff filed an Opposition to Defendant's Motion to Dismiss (ECF No. 13). On March 17, 2022, Defendant filed a Reply to Plaintiff's Opposition to Defendant's Motion to Dismiss (ECF No. 15).

## III. LEGAL STANDARD

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1356 (1990)). Dismissals under Rule 12(b)(6) are generally disfavored by the courts because of their res judicata effect. *Fayetteville Invs. v. Com. Builders, Inc.*, 936 F.2d 1462, 1471 (4th Cir. 1991). The Federal Rules of Civil Procedure only require that a complaint set forth "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level," "detailed factual allegations" are not required in order to satisfy the pleading requirement of Federal Rule 8(a)(2). *Id.* (citations omitted). In considering a motion to dismiss, a plaintiff's well-pleaded allegations are assumed to be true, and the complaint is viewed in the light most favorable to the plaintiff. *Mylan Labs., Inc.*, 7 F.3d at 1134 (citations omitted); *see also Martin*, 980 F.2d at 952. Though accepted as true, the complaint must "state a claim to relief that is plausible on its

face," meaning that the "pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009).

## IV. ANALYSIS

Defendant argues that Plaintiff's Complaint fails to state a valid claim for relief for two reasons. First, Defendant argues that the rule requiring all candidates to be members in good standing for one year prior to nomination was a reasonable rule that was uniformly applied. (Def.'s Mem. Supp. Mot. Dismiss at 6, ECF No. 10.) Second, Defendant argues that the application of the rule requiring one year of good standing prior to nomination was lawful because all candidates had ample notice of the rule. (*Id.* at 9.)

### A. Plaintiff Sufficiently Alleged that the One-Year Rule was Not Uniformly Applied in Violation of the LMRDA

Congress enacted Title IV of the LMRDA as a solution for the need "to protect the rights of rank-and-file members to participate fully in the operation of their union through processes of democratic self-government, and, through the election process, to keep the union leadership responsive to the membership." *Wirtz v. Hotel, Motel & Club Emp. Union, Loc. 6*, 391 U.S. 492, 497 (1968). In furtherance of this purpose, section 481(b) of Title 29 requires that "[e]very local labor organization shall elect its officers not less often than once every three years by secret ballot among the members in good standing." 29 U.S.C. § 481(b). Further, section 481(e) states that

> [i]n any election required by this section which is to be held by secret ballot a reasonable opportunity shall be given for the nomination of candidates and every member in good standing shall be eligible to be a candidate and to hold office (subject to section 504 of this title and to reasonable qualifications uniformly imposed)…

29 U.S.C. § 481(e).

Defendant argues that the Bylaws are the functional equivalent of a constitution and are treated as such, additionally, when a person becomes a union member they agree to be governed by the Bylaws. (Def.'s Mem. Supp Mot. Dismiss at 7.)  Defendant asserts that "[i]t is well established that, '[w]hen the provisions of a union's constitution and by-laws are clear and explicit, their terms may not be ignored.'" (*Id.* (citing *Black v. Transport Workers Union of America, AFL-CIO,* 454 F. Supp. 813, 824 (2d Cir. 1978).)  Accordingly, Defendant reasons that both the union and the court must follow the plain language of the Bylaws. (*Id.*)  Defendant argues that the plain language of the Bylaws requires that candidates for office be members in good standing for one year preceding the date of his or her nomination. (*Id.* at 9.)  Defendant avers that the officers tasked with enforcing the Bylaws may not arbitrarily disregard their clear dictates and that using a past practice to subvert unambiguous language in the Bylaws would create an incentive to undermine explicitly delineated rules moving forward. (*Id.*)  Defendant asserts that this is not a case in which a rule was inconsistently applied within the challenged election. (*Id.*)  Conversely, all nominees in the 2020 election were required to be in good standing for the one-year period prior to their nomination, and Complainant was properly disqualified based upon his failure to meet that qualification. (*Id.*)

Plaintiff argues that Defendant has long waived enforcement of its 12-month continuous good standing rule and allowed candidates who did not fulfill the requirement to run in its 2011, 2014, and 2017 election cycles. (Pl.'s Opp'n at 7, ECF No. 13.)  Additionally, the lack of adequate notice denied members a reasonable opportunity to run or be nominated for office in violation of 29 U.S.C. § 481(e). (*Id.*)  Plaintiff asserts that the reasonableness of a candidate qualification is not only based on the validity of the qualification on its face, but also on how the qualification is applied in practice. (*Id.* (citing 29 C.F.R. § 452.53 ("Qualifications for office which may seem

reasonable on their face may not be proper if they are applied in an unreasonable manner or if they are not applied in a uniform way.")).) Plaintiff avers that a union's history regarding the application of the qualification is an important consideration in evaluating the adequacy of notice and reasonableness. (*Id.* at 8.) Plaintiff asserts that when a union has a long-standing practice of waiving a candidate qualification in its governing documents, courts have recognized the need for the union to inform its membership that it will commence enforcing the provision, and that the notice must be given with sufficient time for members to come into compliance before the election. (*Id.* (citing *Scalia v. Loc. 1694, Int'l Longshoremen's Ass'n*, 2021 WL 1929205 (D. Del. May 13, 2021); *Herman v. Sindicato de Equipo Pesado*, 34 F. Supp. 2d 91, 96 (D.P.R. 1998).) Consequently, Plaintiff argues that when a union fails to provide notice within a sufficient time, the union's application of the qualifications is unreasonable and a violation of the LMRDA. (*Id.*)

Plaintiff has sufficiently pled that Defendant violated section 481(e) of the LMRDA. The Court employs the two-pronged approach to assess the sufficiency of the Complaint as articulated by the Supreme Court in *Twombly*. *Robertson v. Sea Pines Real Est. Cos., Inc.*, 679 F.3d 278, 288 (4th Cir. 2012) (citing *Iqbal*, 556 U.S. at 679). First, "a complaint must contain factual allegations in addition to legal conclusions." *Id.* Second, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* Here, Plaintiff has satisfied both elements. "'Reasonableness', in the context of section 401(e), is 'measured in terms of its consistency with the LMRDA's command to unions to conduct free and democratic union elections.'" [4] *Herman v. Sindicato De Equipo Pesado*, 34 F. Supp. 2d 91, 95 (D.P.R. 1998) (quoting *Hotel, Motel & Club Emp. Union*, 391 U.S. at 499). As Defendant acknowledges, "Plaintiff has not challenged the reasonableness of the rule itself but claims that the rule was not

---

[4] Section 401 of the LMRDA is codified as section 481 of the United States Code.

9

applied uniformly." (Def.'s Mem. Supp. Mot. Dismiss at 7.)  Moreover, the Department of Labor's regulations explain that "[q]ualifications for office which may seem reasonable on their face may not be proper if they are applied in an unreasonable manner or if they are not applied in a uniform way." [5] 29 C.F.R. § 452.53; *Acosta v. Loc. 101, Transp. Workers Union of Am. AFL-CIO*, 339 F. Supp. 3d 80, 90 (E.D.N.Y. 2018) ("The Department of Labor has set forth regulations that, while 'not binding' on courts, may assist in the task of determining whether a given qualification is reasonable."). Here, Defendant failed to apply its qualifications in a reasonable way by deviating from its nearly decade-long practice of waiving the one-year rule without sufficient notice.

In *Sindicato De Equipo Pesado*, the court found that a union unreasonably applied an affiliation fee requirement that was contained in the bylaws for over twenty years. 34 F. Supp. 2d at 96. The court held that the union violated section 401(e) of the LMRDA by choosing to enforce the affiliation fee requirement after failing to enforce it during all previous elections and failing to adequately notify members of its enforcement. (*Id.*)  The court held that although the affiliation fee requirement "was clearly stated, the selectivity of enforcement clearly [ran] counter to the aim of the LMRDA." *Id.* Similarly, here, the Complaint alleges that Defendant's one-year qualification is explicitly stated within the Bylaws. (Compl. ¶ 11.)  However, Defendant failed to enforce the one-year qualification during the 2011, 2014, and 2017 elections, only to suddenly enforce the rule during the 2020 election. This is not a situation where there was no need to enforce the requirement

---

[5] Although regulations are not binding on this Court,

> [t]he law is well settled that an agency's interpretation of a statute with which it has been charged with administering and which has been reduced to a regulation is to be fully accepted by a court as long as Congress has not directly spoken as to the precise question at issue and the interpretation proffered by the agency is a permissible one.

*Herman v. Loc. 305, Nat. Post Off. Mail Handlers, LIUNA, AFL-CIO*, 214 F.3d 475, 479–80 (4th Cir. 2000) (citation omitted). "Here, in accordance with its statutory duty to administer those provisions of the LMRDA pertaining to the enforcement of § 481, the Secretary has promulgated interpretive regulations concerning § 481's enforcement." *Id.*

10

during the prior elections because all members seeking to run for office complied with the one-year rule as written. Indeed, Defendant has found members eligible to run for office during the last three election cycles, despite having been delinquent at some point during the year prior to the nominations meeting so long as the members regained good standing prior to or during the nominations meeting. (Id. ¶ 35.)  Defendant's argument that *Sindicato De Equipo Pesado* is inapposite because the union in that case had *never* enforced the affiliation fee requirement is unpersuasive. (Def.'s Reply at 2, ECF No. 15 (emphasis in the original).)  Defendant stated within its brief that "[t]he rule in question was not only introduced to the members but was made a part of the Union's Bylaws since, for the purposes of this motion only, at least 2011." (Def.'s Mem. Supp. Mot. Dismiss at 9-10.)  Consequently, Defendant, for the purposes of this motion, has also *never* enforced the one-year rule. Defendant's selectivity of enforcement runs counter to the aim of the LMRDA and is thus, unreasonably and ununiformly applied in violation of the Act. Thus, the Court will deny Defendant's Motion to Dismiss as to this argument.

### B. Defendant Failed to Provide Adequate Notice to its Members

Defendant argues that all candidates had ample notice of the one-year rule prior to nominations. (Def.'s Mem. Supp. Mot. Dismiss at 9-10.)  Defendant asserts that it provided adequate notice because it mailed a notice dated October 27, 2020, regarding the nominations meeting to be held on November 17, 2020 and the election to be held on December 15, 2020. (*Id.* at 10.)  Defendant explains that the notice included a separate page that listed the qualifications for candidates, including the one-year good standing requirement as stated by the Bylaws. (*Id.*)  Defendant further argues that its members had adequate notice of this rule because it had been a part of the Bylaws for nearly ten years and the mere lack of an instance of enforcement during these prior elections does not negate the otherwise clear and unequivocal notice. (*Id.* at 11.)

Defendant avers that even if it can be said that the Union failed to provide adequate notice of non-enforcement of the rule in past elections, this should not prohibit its consistent application of the rule going forward. (*Id.*)

Plaintiff argues that given Defendant's established practice of waiving the one-year rule, it had two options for providing its membership with adequate notice of qualifications. (Pl.'s Opp'n at 12.)  Plaintiff asserts that at least twelve months prior to the 2020 election, Defendant could have notified its members that the one-year rule would be strictly applied in the upcoming election. (*Id.*)  Alternatively, prior to the election, Defendant could have notified its members that, based on its past practice, members would be permitted to pay arrearages prior to seeking nomination, regardless of whether the member had twelve months of continuous good standing immediately preceding the election. (*Id.*)  Plaintiff argues that Defendant's failure to notify the members in either way and failure to provide explicit clarification regarding the history of the one-year rule and its applicability left uncertainty about whether the one-year rule would apply in the 2020 election. (*Id.* at 12-13.)  Plaintiff avers that even if members interpreted the October 27, 2020 notice in the manner suggested by Defendant, members were not given enough advance notice to comply with the one-year rule. (*Id.* at 13.)

Here, Plaintiff has sufficiently pled that Defendant did not give adequate notice. "An essential element of reasonableness [of an election qualification] is adequate advance notice to the membership of the precise terms of the requirement." *Loc. 1694*, 2021 WL 1929205, at *2. It is also well established that "unions have a statutory duty under the LMRDA to provide adequate notice of rules that are enforceable on penalty of voter or candidate disqualification, and that neglect of this duty voids a union election." *Herman v. New York Metro Area Postal Union*, 30 F. Supp. 2d 636, 646 (S.D.N.Y. 1998). As stated above, the one-year rule has not been enforced since

its inception in 2011. Although the one-year rule was in the Bylaws, members had no reason to believe that Defendant would enforce the rule during the 2020 election. Furthermore, Defendant admits that notice of the one-year rule qualification was sent on October 27, 2020—less than one month before the November 17, 2020 nominations meeting. Consequently, if any member of the union wanted to run in 2020, Defendant's notice could not have provided adequate time for the member to come into compliance. *Loc. 1694*, 2021 WL 1929205, at *2 (finding that "[t]wo months' notice of a rule that would require resignation two years earlier is hardly enough."); *Reich v. Local 1, American Postal Workers' Union*, No. 93-5167, 1994 WL 110610, at *5 (N.D. Ill. Mar. 31, 1994) (holding that retroactive application of a meeting attendance rule was "clearly unreasonable" because members had inadequate advance notice to comply with the rule).[6] Thus, the Court finds that Plaintiff has adequately pled that Defendant provided inadequate notice of the one-year rule in violation of the LMRDA, and the Court will deny Defendant's Motion to Dismiss as to this argument.

## V. CONCLUSION

For the forgoing reasons, the Court will deny Defendant's Motion to Dismiss.

An appropriate Order shall issue.

```
                                              /s/
Richmond, Virginia                            Roderick C. Young
Date: July 26, 2022                           United States District Judge
```

---

[6] Defendant also argued that even if it failed to provide adequate notice of non-enforcement of the one-year rule in past elections, this should not prohibit its consistent application with the rule moving forward, citing *Loc. 101, Transp. Workers Union of Am. AFL-CIO*. 339 F. Supp. 3d at 95. The Court finds that *Loc. 101*, is inapposite. In *Loc. 101*, the court indeed found that the union's failure to ensure that all rules were applied consistently did not change the fact that the rule at issue was a reasonable qualification uniformly imposed. *Id.* at 96. However, the court in *Loc. 101* reached that finding because the inconsistently applied rules offered by Plaintiff were "primarily on violations of entirely different rules that had no bearing on the outcome of [the] election, and that played no role in disqualifying [Complainant] as a candidate for office." *Id.* at 95. Here, the rule at issue appears to be the sole reason for Complainant's disqualification as a candidate for office.